IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

THE SALAD BOWL FRANCHISE §
CORPORATION, §
 §
          Plaintiff, §
 § Civil Action No. 3:11-CV-0043-D
VS. §
 §
MASON CRANE, et al., §
 §
          Defendants. §

MEMORANDUM OPINION
AND ORDER

As a corollary to its petition to compel arbitration, plaintiff The Salad Bowl Franchise Corporation ("Salad Bowl") moves for a preliminary injunction enjoining defendants from prosecuting a New Mexico state-court lawsuit (the New Mexico lawsuit")[1] and from bringing or prosecuting any other claims that arise out of or relate to defendants' franchise agreement or franchisee relationship with Salad Bowl pending resolution of the arbitration.[2] For the reasons that follow, the court grants the

---

[1] *Mash, LLC v. Salad Bowl Franchise Corp.*, No. CV-2010-13157 (2d Dist. Ct., Bernalillo County, N.M.).

[2] Although in its amended memorandum of law in support of petition to compel arbitration and motion for injunction Salad Bowl asserts that it is entitled to "an injunction to stay further action in the New Mexico lawsuit," *see* Am. Mem. 15, it does not otherwise request a "stay" in the petition, the motion for injunction, or memorandum. Rather, in its papers it requests an injunction preventing defendants from pursuing outside of arbitration any claims relating to their franchise agreement. The court concludes that Salad Bowl is not seeking a stay of state court proceedings but is instead requesting an injunction against defendants.

motion.[3]

I

Salad Bowl, a Texas corporation, entered into a restaurant franchise agreement ("Agreement") with Mason Crane ("Mason") and Henry Crane ("Henry"), New Mexico residents.[4] The dispute resolution clause in the Agreement provides: "This Agreement and the relationship between the parties is governed by and will be construed in accordance with the laws of the State of Texas." P. App. 42. It also states that "Franchisee hereby consents and agrees that any disputes arising between Franchisor and Franchisee be submitted to arbitration as provided in this Paragraph." *Id.*; *see also id*. at 45 (acknowledging the same in another paragraph of the agreement). Paragraph XXIX(B)(1) specifically provides that, with exceptions not applicable here, "all claims arising out of or relating to this Agreement, or any breach thereof, and any controversy regarding the establishment of the fair market value or

---

[3]Salad Bowl's preliminary injunction application is before the court under the procedure permitted by Fed. R. Civ. P. 43(c) and is being decided on the papers without an evidentiary hearing. *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).

[4]In summarizing the facts, the court treats the evidence submitted by Salad Bowl as undisputed because defendants have not responded to Salad Bowl's motion. The court recounts defendants' version of the facts as alleged in the New Mexico lawsuit because it is relevant in determining whether the subject matter of the lawsuit is covered under the arbitration provisions of the Agreement.

leasehold improvements and other Franchised Cafe assets . . . shall be submitted to arbitration in the city and state where Franchisor's principal offices are located at the time the arbitration is commenced." *Id*. at 42.

Defendants subsequently opened a Salad Bowl franchise restaurant in Albuquerque, New Mexico. They allege in the New Mexico lawsuit that Mason and Henry assigned their interests in the Agreement to Mash LLC ("Mash"), a limited liability company of which, according to Salad Bowl, Mason and Henry are the sole members.[5] Defendants' landlord notified the parties in August 2010 that defendants were in default of their lease due to nonpayment. After defendants failed to bring the rent current, Salad Bowl terminated the franchise agreement. Defendants disputed the termination and, in turn, alleged misrepresentation and breach.

Salad Bowl initiated arbitration proceedings with the American Arbitration Association ("AAA") in Dallas, Texas, where Salad Bowl's principal offices are located. In September and October 2010 the parties engaged in settlement discussions that produced a draft Settlement Agreement and Mutual Release ("Settlement Agreement"). The Settlement Agreement sets out the terms for Salad Bowl's purchase of defendants' restaurant and assets and includes a release. The Settlement Agreement, like the Agreement, contains

---

[5]Salad Bowl counters that this assignment was attempted without its consent and is therefore invalid.

a mandatory arbitration clause: "The Parties hereby consent and agree that any and all disputes or claims between them arising out of or relating to this Agreement will be submitted to binding arbitration through the American Arbitration Association in Dallas County, Dallas, Texas." P. App. 67.

Salad Bowl sent representatives to Albuquerque to begin preparing for the transition. In late October, Salad Bowl executed and delivered the final version of the Settlement Agreement to defendants and notified AAA that Salad Bowl was dismissing without prejudice its arbitration demand. Defendants failed, however, to sign or return to Salad Bowl a fully executed copy of the Settlement Agreement.

In November 2010 Mash, Mason, and Henry filed the New Mexico lawsuit against Salad Bowl, Michael Carroll ("Michael"), Dana Carroll ("Dana"), and Richard Benavides ("Benavides").[6] In

---

[6]The New Mexico lawsuit alleges claims for breach of the Agreement, Settlement Agreement, and subsequent promises to pay for delays in closing; violation of an implied covenant of good faith and fair dealing with respect to the agreements and transactions; unfair and unconscionable trade practices for misrepresentation of the nature of the goods and services involved in the parties' transaction; fraud by misrepresenting material facts relating to the franchise and Settlement Agreement; conversion of money paid by defendants for use in a purpose different from that represented; conspiracy; prima facie tort of intentionally depriving defendants of their benefits under the Agreement and Settlement Agreement; and racketeering.
    Defendants allege that Salad Bowl and its co-owners committed several wrongs leading up to the negotiation of the Settlement Agreement: misrepresentation or nondisclosure of material facts; breach of Agreement; sexual harassment by Salad Bowl employees of defendants' employees; misapplication of funds paid for tenant

response, Salad Bowl filed in this court a petition to compel arbitration. It also filed the instant motion for preliminary injunction to prevent defendants from bringing or prosecuting any other claims that arise out of or relate to defendants' franchise agreement or franchisee relationship with Salad Bowl pending resolution of the arbitration. Defendants have not responded to the motion for preliminary injunction, and it is now ripe for decision.[7]

---

improvements and start-up acquisitions; and wrongful counsel and direction to reduce costs of operation by violating laws and regulations.

Defendants also assert that Salad Bowl is responsible for the failure to close on the Settlement Agreement. They allege that the parties had agreed to various additional terms that were unilaterally deleted from the final Settlement Agreement drafted by Salad Bowl, including terms providing for payment of additional sums of money to defendants in exchange for postponing the closing of the Settlement Agreement to accommodate Salad Bowl's delays. According to defendants, Salad Bowl failed to return to the table, after several delays and postponements, when defendants refused to make further accommodations for Salad Bowl's delays until they were reimbursed for operating costs during the delay.

[7]In response to the court's February 22, 2011 order requiring Salad Bowl to file written notice of the date and manner of service on each party to be enjoined, Salad Bowl filed a notice of defendants' executed waiver of service on March 4, 2011. Salad Bowl has also submitted from defendants' attorney of record in the New Mexico lawsuit an acknowledgment that he has received copies of the first amended petition to compel arbitration, the motion for injunction, the memorandum of law in support of the petition and motion, and the accompanying appendix. In addition to waiving service of summons on behalf of Mason, Henry, and Mash, the waiver acknowledges the upcoming deadlines for avoidance of default judgment. Because the copies of the amended petition and pleadings and the request for waiver were sent to each defendant on January 24, 2011, the petition itself remains pending, but the motion for injunction is ripe for decision.

II

To obtain a preliminary injunction, the party seeking relief must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to it outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *See, e.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). "A preliminary injunction is an extraordinary remedy. It should only be granted if the movant has clearly carried the burden of persuasion on all four . . . prerequisites." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).[8]

III

The court first considers whether Salad Bowl has demonstrated a substantial likelihood that it is entitled to injunctive relief.

---

[8]A court can enter a preliminary injunction to preserve the status quo, even if the underlying dispute is plainly covered by a mandatory arbitration agreement. *See Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 777 F. Supp. 1349, 1353 (N.D. Tex. 1991) (Fitzwater, J.).

A

Salad Bowl petitions the court to compel arbitration under § 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4.[9] Section 2 of the FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." This statute "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). Therefore, a district court adjudicating a motion to compel arbitration must engage in a two-step process. *Hadnot v. Bay, Ltd.*, 344 F.3d 474, 476 (5th Cir. 2003). "First, the court must determine whether the parties agreed to arbitrate the dispute" by applying the contract law of the particular state that governs the

---

[9] 9 U.S.C. § 4:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

agreement.  *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263-64 (5th Cir. 2004).  "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996).  If the first step is answered in the affirmative, the court then decides "whether legal constraints external to the parties' agreement foreclosed the arbitration" of the dispute, applying "ordinary state-law principles that govern the formation of contracts."  *Hadnot*, 344 F.3d at 476 & n.2 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

B

The court concludes that the Agreement's dispute resolution clause is a valid agreement to arbitrate among the parties.  The Agreement states in no fewer than three provisions that disputes arising between the franchisor and franchisee must be submitted to arbitration.  *See* P. App. 42, 45 (¶¶ XXIX(B), XXIX(B)(1), XXXIII(G)).  The Agreement is a valid contract under Texas law, which the contract designates as the governing law under ¶ XXIX(A).  *See, e.g., DeClaire v. G & B McIntosh Family Ltd. P'ship*, 260 S.W.3d 34, 44 (Tex. App. 2008, no pet.) (stating elements of valid contract as "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and

delivery of the contract with the intent that it be mutual and binding"). Salad Bowl has demonstrated that there was valid offer and acceptance, and the Agreement is supported by consideration. The concluding sentence of the Agreement provides that the "parties hereto, intending to be legally bound hereby, have duly executed, sealed and delivered this Agreement," followed by the signatures of Salad Bowl's President, Mason, and Henry. Because defendants have not yet responded, the court has no reason to question whether these elements have been met.[10]

C

The court next considers whether the dispute in question falls within the scope of that arbitration agreement.

Paragraph XXIX(B)(1) specifically provides that, with inapplicable exceptions,

> all claims *arising out of or relating to* this Agreement, or any breach thereof, and any controversy regarding the establishment of the fair market value of leasehold improvements and other Franchised Cafe assets . . . shall be submitted to arbitration in the city and state where Franchisor's principal offices are located at the time the arbitration is commenced.

P. App. 42 (emphasis added). Paragraph XXXIII(G) states that "*any* disputes arising between Franchisor and Franchisee be submitted to

---

[10]Salad Bowl notes that the Settlement Agreement also contains an agreement to arbitrate. The court will not rely on this provision because the Settlement Agreement, although referred to in the New Mexico lawsuit, was never executed by defendants.

arbitration." *Id.* at 45 (emphasis added). These are broad arbitration clauses.

> In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.* the Supreme Court labeled as "broad" a clause requiring arbitration of any controversy or claim *arising out of or relating to* this Agreement. An arbitration clause that states that it governs all disputes "related to" the agreement is interpreted as a broad provision encompassing almost all disputes arising between the parties to the contract.

*Sharifi v. AAMCO Transmissions, Inc.*, 2007 WL 1944371, at *3 (N.D. Tex. June 28, 2007) (Fitzwater, J.) (citations and some internal quotation marks omitted). This court held in *Sharifi* that "there [was] no question that [an] arbitration clause in the Franchise Agreement" that provided, in relevant part, that "[a]ll disputes, controversies or claims arising out of or relating to this Agreement shall be settled by binding arbitration" was a broad arbitration clause. *Id.*

Broad arbitration clauses "are not limited to claims that literally arise under the contract, but rather embrace all disputes having a significant relationship to the contract regardless of the label attached to the dispute." *Id.* at *3 (citing *Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)).

- 10 -

> When the scope of an arbitration clause is
> reasonably in doubt, it should be construed in
> favor of arbitration. Arbitration should not
> be denied unless it can be said with positive
> assurance that an arbitration clause is not
> susceptible of an interpretation which would
> cover the dispute at issue. This strong
> presumption in favor of arbitration applies
> with even greater force when the parties
> include a broad arbitration clause.

*Id.* at *2 (citations and internal quotation marks omitted). The claims that defendants assert as plaintiffs in the New Mexico lawsuit unquestionably fall within the scope of the broad arbitration provisions of the Agreement.

Although three of the defendants in the New Mexico lawsuit—Michael, Dana, and Benavides—are not signatories to the Agreement in their individual capacities,[11] the court holds that Salad Bowl is entitled to a preliminary injunction that pertains to the New Mexico lawsuit in its entirety, based on equitable estoppel. "[F]ederal courts have held that so long as there is *some* written agreement to arbitrate, a third party may be bound to submit to arbitration," and "[s]ix theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary." *Bridas S.A.P.I.C. v. Turkmenistan*, 345 F.3d 347, 355-56 (5th Cir. 2003). Salad Bowl cites several cases that hold that a *non-*

---

[11]Michael, as President of Salad Bowl, signed the Agreement on behalf of Salad Bowl.

*signatory* can compel a signatory to submit to arbitration with the non-signatory, *see, e.g.*, *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 526-27 (5th Cir. 2000), and one case that concludes that *signatories* cannot compel a *non-signatory* to arbitrate, *see Bridas*, 345 F.3d at 361, in support of its slightly different proposition that a *signatory* should be able to enjoin *another signatory* from pursuing litigation *against a non-signatory*. Additionally, the court notes that in one unpublished decision, *Griffin v. ABN AMRO Mortgage Group Inc.*, 378 Fed. Appx. 437, 439-40 (5th Cir. 2010) (per curiam) (concerning case where signatory sued other signatory and its law firm), the Fifth Circuit held that a law firm and attorney who were representing a signatory to an arbitration clause could compel the other signatory to arbitrate disputes raised against them because the lawsuit alleged "substantially interdependent and concerted misconduct" among the firm, attorney, and signatory party, even though the firm and the attorney were not signatories to the agreement.

The court concludes that the same rationale that enabled a non-signatory to compel a signatory to arbitrate with the non-signatories in *Griffin* and *Grigson* permits a signatory to compel another signatory to submit to arbitration against a non-signatory, so long as it is on the subject matter covered under the Agreement and the non-signatory is being sued for his acts as agent for the signatory. *See Bridas*, 345 F.3d at 361 (reasoning that result in

*Grigson* and similar cases "makes sense because the parties resisting arbitration had expressly agreed to arbitrate claims of the very type that they asserted against the nonsignatory."). That Mason and Henry signed an agreement containing broad arbitration clauses suggests that they specifically contemplated being bound to arbitrate disputes relating to the franchisor-franchisee relationship, representations made during negotiation of the Agreement, the circumstances of alleged breaches of the Agreement, and the value of assets—i.e., the same type of disputes raised in the New Mexico lawsuit. Defendants' breach of contract claim and breach of implied covenant of good faith and fair dealing are both premised on the alleged breach of the Agreement and failure to perform. The unfair and unconscionable trade practices claim, fraud claim, and prima facie tort claim (predicated on Salad Bowl's allegedly intentional efforts to deprive defendants of benefits promised) are based on false representations made during the course of negotiating and performing the terms of the Agreement. And the conspiracy claim and racketeering claim derives from others already shown to be covered under the subject matter of the Agreement.

As *Grigson* explained:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's

>                   claims arise out of and relate directly to the
>                   written agreement, and arbitration is
>                   appropriate. Second, application of equitable
>                   estoppel is warranted when the signatory to
>                   the contract containing an arbitration clause
>                   raises allegations of substantially
>                   interdependent and concerted misconduct by
>                   both the nonsignatory and one or more of the
>                   signatories to the contract. Otherwise the
>                   arbitration proceedings between the two
>                   signatories would be rendered meaningless and
>                   the federal policy in favor of arbitration
>                   effectively thwarted.

*Grigson*, 210 F.3d at 527 (emphasis omitted) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (describing two circumstances where equitable estoppel may apply); *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) (characterizing *Grigson* holding as broadly estopping signatories against non-parties when the circumstances described above apply);[12]

---

[12]In *Bridas* the Fifth Circuit distinguished between circumstances where a party seeks to compel a non-signatory (as opposed to a signatory) to submit to arbitration as though to narrow the holding of *Grigson* to cases where the subject of the motion to compel is a signatory. *See Bridas*, 345 F.3d at 361. Here, however, the party who would be subject to the motion to compel and injunction is a signatory. Although the Fifth Circuit has held that, "to be enforceable, an arbitration clause must be in writing and signed by the party invoking it," *see Westmoreland v. Sadoux*, 299 F.3d 462, 465 & n.3 (5th Cir. 2002) (citing *Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996)), and that non-signatories can rely on such an arbitration clause only in rare circumstances, these concerns are not apposite here because a signatory is seeking to enjoin another signatory from suing the signatory's agents. *Cf. id*. at 466-67 ("An agent is not ordinarily liable under the contract he executes on behalf of his principal, so long as his agency is disclosed, but he is personally liable if his acts breach an independent duty."); *id*. at 467 (noting that non-signatory agents are subject to the same equitable estoppel framework left to other signatories).

*accord Vinewood Capital, LLC v. Dar Al-Maal Al-Islami Trust*, 295 Fed. Appx. 726, 730 (5th Cir. 2008) (per curiam) (permitting equitable estoppel where claims involve "substantially interdependent and concerted misconduct" by a signatory and non-signatory, without distinguishing whether another signatory or a non-signatory applies for the relief); *Palmer Ventures LLC v. Deutsche Bank AG*, 254 Fed. Appx. 426, 429 (5th Cir. 2007) (per curiam) (characterizing *Grigson* explanation discussed above as the two definitive tests in the Fifth Circuit for determining whether equitable estoppel could apply); *Ford Motor Co. v. Ables*, 207 Fed. Appx. 443, 448 (5th Cir. 2006) (per curiam) (same). The complaint in the New Mexico lawsuit makes clear that Michael, Dana, and Benavides are being sued for actions they allegedly took in their capacities as co-owners and representatives[13] of Salad Bowl in the course of business. *Cf. Keytrade USA, Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (approving application of equitable estoppel *against* non-signatory because non-signatory was acting as agent for signatory principal). The complaint does not distinguish among Salad Bowl, Michael, Dana, and Benavides when describing Salad Bowl's obligations under the Agreement, Settlement Agreement, and oral representations. Therefore, Salad Bowl has

---

[13] In the New Mexico lawsuit, the plaintiffs allege that Dana is the wife of Michael, Salad Bowl's co-owner, and that she has "transacted business and/or committed [tortious] acts in the State of New Mexico." P. App. 50.

demonstrated a substantial likelihood that defendants have relied on the terms of the Agreement in asserting the claims against Michael, Dana, and Benavides in the New Mexico lawsuit. *See Grigson*, 210 F.3d at 528 (noting that signatory cannot "have it both ways"—"it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory").

Furthermore, throughout the complaint in the New Mexico lawsuit, no one defendant is singled out; rather, the complaint generally alleges for each statement of fact and each count that "Defendants," collectively, have committed some wrong or another. In fact, the actions in the complaint are interdependent to such an extent that Mash, Mason, and Henry do not even distinguish among the actions of Salad Bowl, Michael, Dana, and Benavides, and they assert a conspiracy count that alleges that Salad Bowl, Michael, Dana, and Benavides conspired together to commit the other wrongs alleged in the complaint. Therefore, Salad Bowl has shown a substantial likelihood that Mash, Mason, and Henry are equitably estopped from denying that they must arbitrate all the claims in the New Mexico lawsuit that they assert against Michael, Dana, and Benavides.

D

The court determines next whether legal constraints external to the parties' agreement have foreclosed arbitration. Salad Bowl has demonstrated that there is no such constraint and has shown a substantial likelihood that it is entitled to compel Mash, Mason, and Henry to participate in binding arbitration.

IV

The court now considers whether Salad Bowl has demonstrated that there is a substantial threat that Salad Bowl will suffer irreparable injury if the injunction is not granted.

"An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City Comm'n of Deerfield Beach*, 661 F.2d 328, 338 (Former 5th Cir. 1981) (citing *Splegel v. City of Houston*, 636 F.2d 997 (5th Cir. Unit A Feb. 1981); *Parks v. Dunlop*, 517 F.2d 785, 787 (5th Cir. 1975)). If defendants are permitted to litigate their disputes in the New Mexico lawsuit, despite the likelihood that they are covered under the Agreement's arbitration clause, Salad Bowl will be deprived of its right to select the forum in which the disputes are resolved—a deprivation that cannot be remedied merely by monetary compensation. *Cf. Koman v. Weingarten/Investments, Inc.*, 2010 WL 3717312, at *9 (S.D. Tex. Sept. 17, 2010).[14]   Furthermore,

---

[14]*Koman* presents the reverse of the present case. In *Koman* a plaintiff was being forced by defendant *to arbitrate* a dispute when there was a substantial likelihood that the plaintiff was *not*

permitting defendants to proceed in state court carries the risk of irreparable harm in the event the state court reaches a decision affecting matters that should have been submitted to arbitration under the FAA. The court therefore holds that Salad Bowl has established that there is a substantial threat that it will suffer irreparable injury if the injunction is not granted.

V

The court next concludes that the threatened injury to Salad Bowl outweighs the threatened harm that the injunction may do to defendants. Even if Salad Bowl were able to secure the dismissal or abatement of the New Mexico lawsuit while the disputes are arbitrated, the expense and delay of court action would deprive Salad Bowl of a significant benefit of the bargain it struck with defendants under the agreement to arbitrate. *See City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983). By contrast, it is likely that defendants do not have a right to litigate the claims presented in the New Mexico lawsuit. In the unlikely event that defendants prevail and their claims are not subject to arbitration, the preliminary injunction will primarily

---

required to arbitrate. The court concluded that being forced to arbitrate a matter that the parties did not agree to arbitrate unalterably deprived the plaintiff of the right to select his forum. Although the instant case presents the opposite situation, the same principle applies. If defendants are permitted to resolve the dispute in the New Mexico lawsuit, Salad Bowl will be unalterably deprived of its right to proceed by arbitration via the AAA, as the parties agreed to do.

have the effect of temporarily delaying the New Mexico lawsuit until the court determines that there is no danger that a state court judgment will affect a dispute that is properly the arbitrator's to resolve under the FAA. Salad Bowl, on the other hand, faces threatened injury because developments in the New Mexico lawsuit could affect the resolution of matters that should be resolved by arbitration under the FAA. And delaying defendants' lawsuit, while not harmless, will be easier to remedy than will be the threat of injury that Salad Bowl faces if the New Mexico state court were to issue an order or finding that concerns a matter that should be arbitrated.

VI

Finally, the court finds that granting the preliminary injunction will not disserve the public interest.

As the panel noted in *Meridian*, there is a "strong federal policy favoring arbitration over litigation." *Meridian*, 721 F.2d at 529 (citing 9 U.S.C. §§ 1 *et seq.*). *See also Seaboard Coast Line R.R. Co. v. Nat'l Rail Passenger Corp.*, 554 F.2d 657, 660 (5th Cir. 1977) (noting that FAA favors arbitration so strongly that courts are required to grant stays unless it can say with positive assurance that arbitration clause does not cover asserted dispute); *cf. Meridian*, 721 F.2d at 529 (concluding that injunction *against* arbitration would be contrary to public interest). Permitting defendants to pursue litigation of matters that are clearly covered

under the arbitration clause would thwart the public interest in ensuring that agreements to submit to arbitration "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. This is so because the pendency of a competing state proceeding would likely impede the AAA's ability to arbitrate the disputes without court intrusion.

* * *

Having found all four requirements for a preliminary injunction met, Salad Bowl's motion for a preliminary injunction is granted. A preliminary injunction is being filed contemporaneously with this memorandum opinion and order.

**SO ORDERED.**

March 17, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE